ANTHONY J. MINOR *vs.* TIMOTHY J. SHEEHAN and others.

May 25, 1883.

**Chattel Mortgage of Growing Wheat—Description held Sufficient.—** The following description of mortgaged property covered by a chattel mortgage, viz., "125 acres of wheat, more or less, growing on the south half" of a specified governmental section, is in substance the same as "the wheat (be the same more or less) growing on the south half," etc., and is sufficiently definite.

**Same—Valid as to Creditors, though True Consideration not Stated.** If a chattel mortgage is executed in good faith for a valuable consideration, and not for the purpose of defrauding any creditor of the mortgagor, its validity is not affected by the fact that its condition misrepresents the obligation or liability in fact secured and intended to be secured by it. The real consideration of the mortgage may be shown to repel an attack of the mortgagor's creditors.

**Same—Priority—Evidence.—** Priority as between contemporaneously filed mortgages may be shown by parol.

**Same—Levy by Creditor—Right of Mortgagee to Complete Contract.** In case of a contract (for work and payment therefor) between employer and employe, secured by the former by chattel mortgage, the right of the employe to go on under the contract and hold and enforce the mortgage as security therefor, is not affected by a levy by a creditor of the mortgagor upon the mortgaged property.

Action in the district court for Freeborn county, to recover damages for the alleged conversion, by defendants, of mortgaged property. The property in question was wheat, and was levied upon by defendant Sheehan, as sheriff of Freeborn county, as the property of one Austin. Plaintiff claimed title under a chattel mortgage from Austin. A jury was waived and the action tried before *Farmer*, J., who found the facts as recited in the opinion, and ordered judgment for plaintiff. Defendants appeal from an order refusing a new trial.

*Lovely & Morgan*, for appellants.

*Stacy & Todd*, for respondent.

BERRY, J. 1. The chattel mortgage involved in this action describes the mortgaged property as "125 acres of wheat, more or less, growing on the south half" of a specified governmental section of land. We take this description to be, in substance, the same as "the wheat (be the same more or less) growing on the south half," etc. This clearly and distinctly identifies the subject of the mortgage, and it is therefore sufficiently definite.

2. It was orally agreed by plaintiff and one Austin that the former would work with his team for the latter on his farm for 10 months, beginning March 16, 1881, at $30 per month, with the privilege of quitting at any time after harvest; payment of the wages to be made February 15, 1882, and to be secured by mortgage upon crops growing upon the farm. On April 21, 1881, pursuant to this agreement, "and in payment for labor already performed, and in security for labor thereafter to be performed," Austin made and delivered to plaintiff his promissory note for $300, payable to plaintiff's order, February 15, 1882, and on the same day, "for the purpose of securing the payment of said note and the wages of the plaintiff, and in pursuance of said verbal agreement," Austin also executed in plaintiff's favor a chattel mortgage upon the wheat mentioned, and the same was duly filed in the proper office. Indorsed upon the note, at the time of its execution, was a memorandum as follows: "This note given to secure Anthony Minor for work performed on my farm at $30 per month, and when said note" (debt or work evidently meaning) "is settled for, this note is null and void." With reference to this memorandum, we remark, in passing, that it prevented Minor

from transferring the note so as to pass to the transferee any greater rights against Austin than Minor himself had. The mortgage was conditioned for payment to plaintiff of $300, according to the conditions of a certain promissory note, (describing it.)

We have, then, a case of a mortgage in proper form, duly filed, and, upon the facts which we have recited, the trial court was justified in its finding that it "was executed in good faith, for a valuable consideration, and not for the purpose of defrauding any creditor" of the mortgagor. The mortgage is therefore valid. Its validity is not affected by the fact that its condition misrepresents the obligation or liability in fact secured and intended to be secured by it. The question still is, was the mortgage made with intent to hinder, delay, or defraud the mortgagor's creditors? If it was not, then the form of its condition is not of decisive importance. It is, of course, always better in the condition of a mortgage to describe the liability secured according to the fact, for, when this is not done, it may become necessary to explain away a suspicion. But if this course is not taken, the real consideration of the mortgage may nevertheless be shown to repel an attack of creditors, and if, upon investigation, a proper consideration and lawful intent are found, the mortgage will stand. *McKinster* v. *Babcock*, 26 N. Y. 378, and cases cited; Jones on Chat. Mort. § 82; *Goodheart* v. *Johnson*, 88 Ill. 58; *Speer* v. *Skinner*, 35 Ill. 282.

3. The testimony as to the priority intended to be given to plaintiff's mortgage over the two contemporaneous mortgages was properly received. In executing and filing the three mortgages, Austin appears to have acted as the agent of the three mortgagees, and his acts in the premises, and his intent in performing the same, were those of his principals. As to the right to show priority as between contemporaneously filed mortgages, see *Chadbourn* v. *Rahilly*, 28 Minn. 394.

4. Pursuant to his agreement, plaintiff commenced work on March 16th, and continued until September 8th, when he quit, and, upon a settlement with Austin, there was found justly due him $141.30. For this sum, and interest, judgment was properly ordered for plaintiff, it appearing that the value of the wheat covered by his mortgage and converted by defendants exceeded that amount. The fact that the wheat was levied upon by defendants before the performance of all

his work by plaintiff, did not affect his right to go on under the verbal agreement, and hold and enforce the mortgage as security therefor. This follows from the fact that the agreement was a valid one, so that the plaintiff was entitled to perform it and receive the benefit—a right of which he could not be deprived by the intervention of Austin's creditors, or of any third person.   See Jones on Chat. Mort. § 97, and *Preble* v. *Conger*, 66 Ill. 370.

Order affirmed.