MORITZ HEIM, Assignee, v. CHARLES E. CHAPEL, Sheriff, and Another.[1]

Nov. 4, 1895.

Nos. 9496—(72).

**New Trial.**

Order granting a new trial, because the verdict was not sustained by the evidence, affirmed. Hicks v. Stone, 13 Minn. 398 (434), followed.

**Fraud on Creditors—Chattel Mortgage—Overstatement of Debt.**

Where a chattel mortgage is executed in good faith for a valuable consideration, and not for the purpose of defrauding creditors of the mortgagor, the fact that it was given to secure a larger sum than is actually due does not affect its validity, but such overstatement of the debt secured, unexplained, indicates fraud, and the burden is upon the mortgagee claiming under the mortgage as against creditors to explain the overstatement, and establish the bona fides of his mortgage.

Appeal by plaintiff from an order of the district court for Ramsey county, Otis, J., granting a motion for a new trial. Affirmed.

*C. D. & Thos. D. O'Brien*, for appellant.

*Herchmer Johnston* and *Warner, Richardson & Lawrence*, for respondents.

START, C. J. The plaintiff brought this action, as assignee in insolvency proceedings of Fergus D. Abbey, to recover the value of certain personal property formerly belonging to his assignor, which he claimed the defendants had unlawfully converted to their own use.

[1] Reported in 64 N. W. 825.

The defense was that the property was taken, by virtue of a chattel mortgage executed by Abbey and duly filed some 14 months before his assignment to the plaintiff, and lawfully sold to pay the mortgage debt.    The only issue of fact in the case, aside from the value of the property, was the validity of this mortgage, the plaintiff claiming that it was fraudulent and void as to creditors.    Verdict for the plaintiff, and from an order of the trial court granting the defendants' motion for a new trial on the ground that the verdict was not justified by the evidence, the plaintiff appealed.

The only question for our decision is whether the preponderance of the evidence is manifestly and palpably in favor of the verdict, so as to bring the case within the rule laid down in Hicks v. Stone, 13 Minn. 398 (434); Rheiner v. Stillwater S. R. & T. Co., 29 Minn. 147, 12 N. W. 449; and subsequent cases.

It is an admitted fact in the case that the mortgage in question was given to secure the sum of $12,000, while the actual debt secured was only $8,200.    If a chattel mortgage is executed for a valuable consideration, and in good faith, and not for the purpose of defrauding the creditors of the mortgagor, the fact that it is given to secure a larger sum than is actually due does not affect its validity.    Nazro v. Ware, 38 Minn. 443, 38 N. W. 359.    But where the mortgage on its face secures a sum largely in excess of the true amount due to the mortgagee, it is an important circumstance to be taken into consideration in determining whether or not the mortgage was in fact made in good faith, and not for the purpose of defrauding creditors. The burden was upon the defendants to establish the bona fides of the mortgage, and in view of the very large overstatement of the amount of the actual debt secured by the mortgage, to satisfactorily explain why it was taken to secure an apparent debt nearly 50 per cent. in excess of the true indebtedness.    In the absence of such explanation, such overstatement would be a very strong item of evidence tending to show that the mortgage was fraudulent.

The defendants offered such explanation, which was to the effect that the St. Paul National Bank was the beneficiary of the mortgage, and that it was taken in the name of its cashier, to secure an actual indebtedness of $8,200, due from the mortgagor, Abbey, to the bank, and then secured, except $200 thereof, by a mortgage on the property in question; that when this mortgage was renewed it was, at Abbey's

request, made for $12,000, for no other purpose except to secure such actual indebtedness, and such overdrafts and future advances as the bank might, from time to time, allow and make to him. The defendants' evidence further tends to show that while there was no express agreement made by the bank to make such future advances, yet that it was understood between the parties that not unlikely Abbey would need such advances, and, if he did, the bank would in all probability make them; and that the mortgage was taken in the amount in which it was made so that in case the advances were made it would not be necessary to renew the security. The mortgagor was a witness, and his evidence tends to show that there was no understanding that any further advances should be made to him, or that the mortgage was to secure future advances, but, on the contrary, that the overstatement in the mortgage of the indebtedness was for the purpose of preventing his creditors from attaching the property. There is also evidence tending to show that he was running behind in his business, and was owing other creditors than the bank at the time the mortgage was made, but there is no evidence in the case tending to show that there were any debts against Abbey outstanding at the time the assignment was made which were incurred before the mortgage was made and filed. It is admitted that there are creditors who have proved their claims against Abbey's estate.

We have not attempted to give the evidence in full on either side, but simply to refer to some of its most salient outlines. We have, however, given to the entire evidence a somewhat careful consideration, and, while we cannot resist the conclusion that the verdict was supported by the evidence, yet, taking the record as we find it, we cannot say that the preponderance of the evidence is manifestly and palpably in favor of the verdict. The granting of a new trial in this case was, in our opinion, a reasonable and proper exercise of the discretion vested in the trial court.

Order affirmed.